Lois BENNETT and Paul Bennett, Plaintiffs,

v.

JACK DENNIS WHITEWATER TRIPS, d/b/a Dave Hansen Whitewater, Defendant.

Civ. Action No. 95–40153–NMG.

United States District Court, D. Massachusetts.

May 24, 1996.

Alan Garber, Paul D. Boynton, Mason & Martin, Boston, MA, Daniel W. Cronin, Leominster, MA, for Lois Bennett and Paul Bennett.

Robert E. Kiely, Pettingell & Regan, Boston, MA, Joseph A. Regan, Paige N. Tobin, Pettingell & Regan, Boston, MA, for Jack Dennis Whitewater Trips.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Massachusetts residents, Lois and Paul Bennett ("the Bennetts"), filed a three-count Complaint against the defendant, Jack Dennis Whitewater Trips, d/b/a Dave Hansen Whitewater ("Dave Hansen Whitewater"), a Wyoming corporation. Plaintiffs' state law tort claims arise out injuries suffered by Mrs. Bennett while on a whitewater rafting excursion conducted by defendant on the Snake River in Jackson, Wyoming. This Court's subject matter jurisdiction is premised upon the parties' diversity of citizenship. *See* 28 U.S.C. § 1332(a)(1).

In their Complaint, plaintiffs allege that on August 14, 1993, they took a whitewater raft-

ing trip conducted by Dave Hansen Whitewater. Defendant provided the raft and the services of a guide to navigate the river. At the conclusion of the trip, the passengers disembarked at a concrete ramp extending from the beach area into the river. Upon arriving at the ramp, the guide instructed the passengers, including the Bennetts, to assist in flipping the raft over to drain it of water and in dragging the raft onto the upper portion of the ramp. While complying, Mrs. Bennett lost her footing on the ramp, landed on an uneven and rocky surface of the riverbed, and suffered a fractured left leg and torn cartilage in her left knee.

The plaintiffs filed their complaint in this Court on August 17, 1995. On October 3, 1995, the defendant filed a motion to dismiss for lack of personal jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(2). Defendant argues that its contacts with Massachusetts are sufficient to satisfy neither the Massachusetts long-arm statute nor the due process clause of the United States Constitution. Plaintiffs oppose the motion. Upon consideration of the briefs filed by the parties and the oral arguments presented at a hearing on the motion, this Court concludes that defendant's motion should be allowed.

## I. *Legal Standard*

■■■ When challenged by defendant, the plaintiff bears the burden of proving the existence of personal jurisdiction. *See Foster–Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 145 (1st Cir.1995). In considering defendant's motion, this Court employs the *prima facie* standard, under which the Court considers whether the plaintiffs have proffered evidence that, "if credited, is enough to support findings of all facts essential to personal jurisdiction." *Boit v. Gar–Tec Products, Inc.,* 967 F.2d 671, 675 (1st Cir.1992). When determining whether a *prima facie* showing has been made, this Court does not act as a factfinder, but instead "accepts properly supported proffers of evidence by a plaintiff as true." *Boit,* 967 F.2d at 675.

## II. *Factual Background*

Because questions of personal jurisdiction involve detailed examination of the particular circumstances of each case, facts of jurisdictional significance must be set forth at some length. *See Nowak v. Tak How Investment Ltd.,* 899 F.Supp. 25, 27 (D.Mass.1995). To demonstrate their *prima facie* case for personal jurisdiction, plaintiffs rely principally upon an affidavit (and accompanying exhibits) submitted by Mrs. Bennett. Plaintiffs also contend, however, that statements made by the president of defendant in an affidavit filed in support of its motion provide further evidence that the exercise of personal jurisdiction is appropriate.

Defendant is a Wyoming corporation with its only place of business in Jackson, Wyoming. All of the officers and employees of defendant are Wyoming residents. Dave Hansen Whitewater has no Massachusetts office, telephone number, bank accounts or post office box in the Commonwealth. *See* Affidavit of David Hansen ("Hansen Aff."). Defendant sends no brochures or promotional material to the Commonwealth unless directly contacted by a Massachusetts resident and requested to do so.[1] *Id.* at ¶ 11. No employee of defendant has ever attended any travel shows, conventions, or trade shows within the Commonwealth.

The only business relationship between defendant and any east coast travel agency or tour promoter is with the Pawtucket, Rhode Island office of Collette Tours, Inc. ("Collette Tours").[2] Once each year, the Pawtucket, Rhode Island office of Collette Tours contacts Dave Hansen Whitewater to request a price for whitewater rafting trips to be offered to customers of Collette Tours while on such tours in the Jackson, Wyoming area. Hansen Aff. at ¶ 12. Defendant provides Collette Tours with a price quote that is guaranteed for the ensuing year. *Id.*

---

1. No such brochures or advertising materials were requested by the plaintiff in the case at bar, and none were sent. *Id.* at ¶ 11.

2. Collette Tours operates out of Pawtucket, Rhode Island, and has two local offices in Saugus and Braintree, Massachusetts. Affidavit of Lois Bennett ("Bennett Aff.") at ¶ 11.

Thereafter, Collette Tours offers the whitewater rafting trip as an available activity as part of its larger tour package to its customers. *Id.* Usually, a Collette Tours representative contacts defendant approximately two days before a group's arrival in the Jackson area to notify defendant how many of its customers wish to participate in a rafting trip. *Id.* Patrons of Collette Tours who choose to take the whitewater excursion comprise approximately 10% of the defendant's total annual business; of that 10%, defendant "estimate[s] that approximately 1%–2% of those individuals are Massachusetts residents." *Id.* at ¶¶ 14–15. At no relevant time did any employee of defendant have any conversation or business dealings with any Massachusetts office of Collette Tours. *Id.* at ¶ 18.

In early 1993, Mrs. Bennett sought information about touring various national parks in the western United States from GIT Travel, Inc. ("GIT Travel"), a travel agency in Leominster, Massachusetts. GIT Travel provided literature to the Bennetts regarding a 13–day "National Parks Tour" sponsored by Collette Tours. Bennett Aff. at ¶ 3. The "National Parks Tour" included a stop in Jackson, Wyoming and provided an option of "river raft trips," although the brochure contained no reference to Dave Hansen Whitewater. *See* Bennett Aff., Exhibit A. The opportunity to participate in a rafting trip was an important factor in the plaintiffs' decision to take the "National Parks Tour." Bennett Aff. at ¶ 5.

The Bennetts paid for the August, 1993, tour by check to GIT Travel, which forwarded the payment to Collette Tours. *Id.* at ¶ 6. Plaintiffs then received an itinerary and agenda from Collette Tours in a GIT Travel folder. *Id.* At that time, the Bennetts learned that Collette Tours would provide a tour guide for the "National Parks Tour" and that GIT Travel was an agent of Collette Tours. On page 75 of its brochure, Collette Tours states that:

> In all matters relating to the making of arrangements for ... sightseeing tours and services ... Collette Tours [ ] will act only in the capacity of an agent for the ...

suppliers stated in the tour literature describing the services provided.

*See* Bennett Aff., Exhibit A.

After arriving in Wyoming, the Bennetts were asked by their tour guide whether they wished to participate in the rafting trip. Bennett Aff. at ¶ 7. After receiving an affirmative response, the guide instructed the plaintiffs to provide her with a check payable to Collette Tours and that Collette would, in turn, pay Dave Hansen Whitewater. *Id.* The guide then gave the Bennetts a brochure describing the rafting trip provided by the defendant. *Id.* On the cover of the brochure is a statement that defendant is "AAA Approved." *See* Bennett Aff., Exhibit B. The trip offered by defendant was the only rafting option made available by Collette Tours during plaintiffs' trip. Bennett Aff. at ¶ 7. Mrs. Bennett "[never would have] learned about the defendant's business nor would [she] have ever used its whitewater rafting services if not for Collette Tours." *Id.* at ¶ 9.

In her affidavit, Mrs. Bennett also states that she "has learned that the defendant advertises in the American Automobile Association Tour Book for the State of Wyoming," a publication available to Massachusetts residents at local AAA offices. *Id.* at ¶ 12; Bennett Aff., Exhibit C at pp. 126–27.

### III. *Discussion*

■ A federal court exercising diversity jurisdiction must find sufficient contacts between the defendant and the forum state to satisfy both that state's long-arm statute and the Fourteenth Amendment Due Process clause. *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 204 (1st Cir.1994).

#### A. *The Massachusetts Long–Arm Statute*

■ The relevant provision of the Massachusetts long-arm statute in the case at bar is M.G.L. c. 223A, § 3(a), which provides that a Massachusetts court may exercise personal jurisdiction:

> over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's ... transacting any business in this Commonwealth.

*Id.* In order for jurisdiction to exist pursuant to § 3(a), therefore, the facts must satisfy two requirements: 1) the defendant must have transacted business in Massachusetts, and 2) the plaintiffs' claim must have arisen from the defendant's transaction of such business. *Tatro v. Manor Care, Inc.,* 416 Mass. 763, 767, 625 N.E.2d 549 (1994).

■ The "transacting any business" clause in § 3 has been construed broadly by Massachusetts courts. *See Tatro,* 416 Mass. at 767, 625 N.E.2d 549. The SJC has explained that

> although an isolated (and minor) transaction with a Massachusetts resident may be insufficient, generally the purposeful and successful solicitation of business from residents of the Commonwealth, by a defendant or its agent, will suffice to satisfy this requirement.

*Id.*

■ The Bennetts argue that Dave Hansen Whitewater solicited their business in Massachusetts "by way of Collette Tours and GIT Travel." Plaintiffs' Memorandum at 8. Specifically, plaintiffs contend that the mailing by Collette Tours to a Massachusetts travel agency of literature containing a one-line reference to rafting trips (although not referencing the defendant by name) constitutes the "transaction of business" by Dave Hansen Whitewater in the Commonwealth. In support of their position, plaintiffs rely heavily upon *Tatro* and *Nowak v. Tak How Investment, Ltd.,* 899 F.Supp. 25 (D.Mass. 1995). In each of those cases, courts interpreting § 3(a) of the Massachusetts long-arm statute determined that a nonresident defendant hotel's solicitation of business in Massachusetts (by accepting a reservation and contracting with a Massachusetts plaintiff) constituted a sufficient transaction of business to satisfy the long-arm statute.

In the case at bar, however, no contact occurred and no contract was entered into between plaintiffs and the defendant while the Bennetts were in Massachusetts. The plaintiffs first received information about Dave Hansen Whitewater upon arriving in Wyoming during their Tour. They did not reserve or pay for the separate, optional whitewater rafting trip in Wyoming until after their arrival in that State. In short,

unlike the hotels in *Tatro* and *Nowak,* the defendant had no direct communications with the Bennetts in Massachusetts.

With respect to the second requirement of the long-arm statute, i.e., that the cause of action "arise from" the transaction of business in Massachusetts, the SJC has adopted a liberal "but for" test. *Id.* at 770, 625 N.E.2d 549. In *Tatro,* for example, the Court held that the resident plaintiff's injuries "arose from" the California hotel's transaction of business in Massachusetts because but for 1) the hotel's solicitation of her business, and 2) the hotel's agreement to provide the plaintiff with a hotel room in California, plaintiff would not have been injured at the hotel. *Id.* at 771–72, 625 N.E.2d 549. The *Tatro* Court concluded, therefore, that the Massachusetts resident's in-forum act of reserving a room in an out-of-state hotel "is considered the first step in a train of events that results in personal injury." 416 Mass. at 770, 625 N.E.2d 549.

By contrast, in the instant case, this Court cannot conclude that "but for" some in-forum action(s) by Dave Hansen Whitewater, the plaintiff would not have been injured in Wyoming. As discussed above, there were no specific contacts between defendant and plaintiffs in Massachusetts. Unlike *Tatro,* this case involves no telephone communication between plaintiffs and an employee of the defendants. In addition, no contract was entered into between the parties in Massachusetts; rather, the plaintiffs did not reserve a place or pay for the optional whitewater rafting trip until they arrived in Wyoming. In the absence of the requisite contacts between the defendant and the forum state, the conditions of the long-arm statute cannot be satisfied.

### B. *The Due Process Clause*

■ Assuming, *arguendo,* that plaintiffs had surmounted the statutory hurdle of the jurisdictional analysis, this Court's exercise of personal jurisdiction over defendant would nevertheless be improper until it is also demonstrated that such exercise is constitutionally permissible. The due process clause of the United States Constitution requires mini-

mum contacts between a nonresident defendant and the forum such that the exercise of personal jurisdiction over the defendant accords with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In analyzing minimum contacts, courts have distinguished between two kinds of personal jurisdiction: "general" and "specific." In their brief as well as at oral argument, plaintiffs contend that this Court may properly exercise either kind of jurisdiction over Dave Hansen Whitewater.

■■■ "General" jurisdiction exists when the litigation "is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in systematic activity, unrelated to the suit, in the forum state...." *United Elec. Workers v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1088 (1st Cir.1992) ("Pleasant St. I"). Upon comparing the facts of the case at bar to the facts in other cases in which courts have declined to exercise general jurisdiction, this Court concludes that general jurisdiction over Dave Hansen Whitewater is wholly lacking.

In *Tatro,* for example, the defendant California hotel had, over a period of several years, directly solicited and obtained business from numerous Massachusetts individuals and businesses, and, as well, had established direct billing arrangements with several Massachusetts corporations. The SJC, nevertheless determined that the totality of the hotel's activities in Massachusetts "[did] not approach the volume required for an assertion of general jurisdiction." 416 Mass. at 772 & n. 6, 625 N.E.2d 549.

Similarly, in *Nowak,* the defendant Hong Kong hotel had 1) directly solicited a Massachusetts company's business travellers, 2) hosted at least 20 different employees of that company, and 3) received nearly $120,000 from at least 82 traveling Massachusetts residents, see 899 F.Supp. at 32 & n. 7, yet the Court determined that the plaintiffs did not demonstrate such continuous and systematic

activities to subject it to general jurisdiction in Massachusetts. *Id.* at 30 & n. 4. With the foregoing guideposts in mind, this Court concludes that general jurisdiction over Dave Hansen Whitewater does not exist.

■■■ "Specific" jurisdiction, in contrast, narrows a court's focus to a "specific set of interactions as a basis for personal jurisdiction." *Foster–Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 144 (1st Cir.1995); *see also Donatelli v. National Hockey League,* 893 F.2d 459, 462–63 (1st Cir.1990). The First Circuit utilizes a three-part analysis to determine if sufficient contacts exist to exercise specific personal jurisdiction:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

*Pleasant St. I,* 960 F.2d at 1089; *see also Pritzker v. Yari,* 42 F.3d 53, 60–61 (1st Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1959, 131 L.Ed.2d 851 (1995). These factors are considered *seriatim.*

### 1. *Relatedness*

■■■ The first consideration under the tripartite framework is whether the plaintiffs' claim arises out of, or relates to, defendant's in-forum activities. *Sawtelle v. Farrell,* 70 F.3d 1381, 1389 (1st Cir.1995). Relatively speaking, the relatedness inquiry is a "flexible, relaxed standard." *Pritzker,* 42 F.3d at 61. Although the relatedness requirement is "the least developed prong of the due process inquiry," *Ticketmaster,* 26 F.3d at 206, the First Circuit has observed that the requirement serves the important function of directing a court's attention to the nexus between a plaintiff's claim and the defendant's contacts with the forum.[3] *See*

---

3. An analysis of the constitutional prong of spe-

cific personal jurisdiction "requires an 'arising

*Pleasant St. I.*, 960 F.2d at 1089. Specifically, the relatedness requirement

> is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state.

*Sawtelle*, 70 F.3d at 1389. Indeed, in *Pleasant St. I*, the First Circuit explained that, at this stage of the analysis, it is important to bear in mind the nature of plaintiffs' claim and to consider whether plaintiffs' cause of action can "conceivably be said to have arisen directly from, or been caused proximately by," defendant's contacts with the forum. 960 F.2d at 1089.

In the case at bar, of the limited contacts between Dave Hansen Whitewater and Massachusetts, "few are relevant to the [Bennetts'] claim of [negligence] and thus few assist them in satisfying the relatedness element of the jurisdictional inquiry." *Sawtelle*, 70 F.3d at 1389; *see also id.* at 1390 (series of telephone calls and letters between New Hampshire plaintiffs and non-resident attorneys was not the effective cause of out-of-forum negligence); *Pleasant St. I*, 960 F.2d at 1089. Indeed, the paucity of Dave Hansen's contacts with Massachusetts is striking. Although defendant's listing in an AAA Tour Book for the State of Wyoming (presumably available in AAA offices in Massachusetts) constitutes a contact with the forum, plaintiffs neither obtained nor read that publication prior to the instant lawsuit. *See* Bennett Aff. at ¶ 12. Moreover, plaintiffs allege no direct telephonic or written communications with Dave Hansen Whitewater in Massachusetts prior to their trip, but rather that they first learned about defendant in Wyoming when they received a brochure detailing its services.

In support of their argument, plaintiffs mainly rely upon an "agency theory" that proceeds as follows:

1) GIT, a Massachusetts travel agency, provided the Bennetts with a travel brochure from Collette Tours, a Rhode Island tour company,

2) the "National Parks Tour" described in that brochure contained a reference to a "river raft trip," although defendant is not mentioned anywhere in the brochure,

3) the Collette brochure provides (at page 75) that Collette "will act only in the capacity of an agent for the [service] suppliers" and, accordingly,

4) Collette's provision of the brochure to the plaintiffs (via GIT) constituted direct solicitation of the Bennetts by Dave Hansen Whitewater's agent sufficient to satisfy the relatedness inquiry.

This Court is unpersuaded by plaintiffs' theory for two reasons. First, it was a Rhode Island-based office of Collette Tours which contacted defendant once each year, seeking a price guarantee for its services. It is an unacceptable stretch to conclude that from that sole contact any and all activities undertaken by Collette in Massachusetts constituted the functional equivalent of direct solicitation of business by Dave Hansen Whitewater.[4]

Second, even assuming, *arguendo*, that Collette was Dave Hansen Whitewater's agent in Massachusetts by virtue of providing the Bennetts with the brochure, it cannot reasonably be argued that such contact is relevant to the proof of plaintiffs' claim of negligence and hence does not support a demonstration of the requisite relatedness. *Cf. Sawtelle*, 70 F.3d at 1389–90; *Pleasant St. I*, 960 F.2d at 1089 (noting how causation principles inform the due process analysis). In short, the contacts between Dave Hansen Whitewater and Massachusetts do not warrant the exercise of personal jurisdiction over the defendant.

out of' inquiry distinct from that undertaken under the Massachusetts long-arm statute." *Nowak*, 899 F.Supp. at 30.

**4.** Inasmuch as the materials sent into Massachusetts by Collette neither specifically identify defendant nor refer to it as an exclusive provider of rafting services, but simply make reference to a "river raft trip" option, it is questionable whether Collette was an "agent" of Dave Hansen Whitewater for any purpose, notwithstanding Collette's unilateral declaration of agency in the fine print of its brochure.

## 2. *Purposeful Availment*

The analysis of the second element of the constitutional prong of specific personal jurisdiction involves a determination of whether the defendant's contacts with the forum state represent a "purposeful availment" by defendant of the privilege of conducting business in that state. *See Ticketmaster,* 26 F.3d at 207. The cornerstones of the "purposeful availment" requirement are voluntariness and foreseeability. *Id.*

In the instant case, the record is bereft of evidence demonstrating that Dave Hansen Whitewater voluntarily and purposefully availed itself of the benefits and protections of Massachusetts law. Plaintiffs' argument that defendant's listing in the AAA Wyoming Guide Book constitutes "purposeful availment" is untenable on two grounds. First, the paths of defendant and plaintiffs crossed not as a result of affirmative efforts by Dave Hansen Whitewater to promote its rafting business in Massachusetts, but only after the Bennetts had entered Wyoming and decided to participate in a rafting excursion there. *Cf. Sawtelle,* 70 F.3d at 1393. Secondly, to treat defendant's listing in a Wyoming guide book as a sufficiently direct "targeting" of Massachusetts would be to embrace, in effect, the "stream of commerce" theory of personal jurisdiction rejected by the First Circuit. *See id.* (non-resident law firm's listing in a nationally-available publication failed to demonstrate "purposeful availment" of benefits and protections of Massachusetts law); *Boit v. Gar–Tec Products, Inc.,* 967 F.2d 671, 681–82 (1st Cir.1992).

A similar conclusion is compelled with respect to the second "cornerstone" of the "purposeful availment" requirement for personal jurisdiction: foreseeability. In *Sawtelle,* the Court suggested that "[t]he enforcement of personal jurisdiction over a nonresident defendant is foreseeable when that defendant has established a continuing obligation between itself and the forum state." 70 F.3d at 1393. For the reasons discussed *supra,* no such "continuing obligation" between Dave Hansen Whitewater and Massachusetts exist. In short, this Court concludes that defendant did not "invok[e] the benefits and protections" of Massachusetts law, thereby rendering foreseeable and reasonable its compelled presence before Massachusetts courts. *See Pritzker,* 42 F.3d at 60; *Ticketmaster,* 26 F.3d at 207–08.

## 3. *The Gestalt Factors*

The third and final stage of the personal jurisdiction analysis affords an opportunity for concepts of reasonableness to illuminate that review. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). The Supreme Court has identified five such considerations, termed by the First Circuit the "gestalt factors": (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985).

In *Ticketmaster,* the First Circuit observed that a failure to demonstrate the requisite minimum contacts eliminates the need to reach the issue of reasonableness: "[t]he [g]estalt factors come into play only if the first two segments of the test for specific jurisdiction have been fulfilled." *Pleasant St. I,* 960 F.2d at 1091 & n. 11. In the instant action, the plaintiffs have failed to navigate the first two elements of the jurisdictional analysis, and hence there is no need to apply the gestalt factors to the case at bar.

## ORDER

For the foregoing reasons, defendant's motion to dismiss for lack of personal jurisdiction is **ALLOWED**.

So ordered.