**Johanna SIGROS and Sophie Sigros, Plaintiffs,**

v.

**WALT DISNEY WORLD CO., Walt Disney World Hospitality & Recreation Corporation, and John Doe, Defendants.**

**No. CIV. A. 99–40201NMG.**

United States District Court,
D. Massachusetts.

Jan. 8, 2001.

Henry R. Simonelli, Simonelli & Associates, Southbridge, MA, for Johanna Sigros, Sophie Sigros.

Jeffrey S. Follett, Foley, Hoag, & Eliot, Boston, MA, Paul Bork, Hinckley, Allen & Snyder, Boston, MA, for Walt Disney World Co.

Paul Bork, Hinckley, Allen & Snyder, Boston, MA, for Walt Disney World Hospitality and Recreation Corp., John Doe.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Massachusetts residents, Sophie Sigros ("Sophie") and her daughter, Johanna Sigros ("Johanna"), filed a fifteen-count complaint against the defendants, Walt Disney World Co. ("Disney"), Walt Disney World Hospitality & Recreation Corporation ("HRC"), and Disney's employee, John Doe, alleging various state-law torts as well as violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* Plaintiffs' claims arise out of injuries suffered by Johanna while the plaintiffs were vacationing in Florida at a resort owned by Disney. Plaintiffs' claim that this Court has subject matter jurisdiction is premised upon diversity of citizenship. 28 U.S.C. § 1332(a)(1).

The plaintiffs filed an amended complaint ("the Amended Complaint") on January 12, 2000. Pending before this Court is the motion of the defendants to dismiss the Amended Complaint pursuant to Fed. R.Civ.P. 12(b)(2), (3), and (6) or, in the alternative, to transfer venue to the United States District Court for the Middle District of Florida (Docket No. 6). Because the primary thrust of the motion is that this Court lacks personal jurisdiction over the defendants, this memorandum and order focuses on that dispositive jurisdictional issue.

## I. *Legal Standard*

When challenged by the defendant, the plaintiff bears the burden of proving the existence of personal jurisdiction. *Foster–Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 145 (1st Cir. 1995). In considering the defendants' motion, this Court employs the *prima facie* standard under which the Court considers whether the plaintiffs have proffered evidence that, "if credited, is enough to support findings of all facts essential to personal jurisdiction." *Boit v. Gar–Tec Products, Inc.,* 967 F.2d 671, 675 (1st Cir. 1992). When determining whether a *prima facie* showing has been made, this Court does not act as a factfinder, but instead "accepts properly supported proffers of evidence by a plaintiff as true." *Id.* at 675.

## II. *Factual Background*

Because questions of personal jurisdiction involve detailed examination of the particular circumstances of each case, facts of jurisdictional significance must be set forth at some length. *Nowak v. Tak How Inv. Ltd.,* 899 F.Supp. 25, 27 (D.Mass. 1995), *aff'd,* 94 F.3d 708 (1st Cir.1996).

Disney is a Florida corporation qualified to do business in Florida and California and has its principal place of business in Florida. Disney's principal activity consists of the ownership and management of entertainment and recreational facilities in Florida and California. At all times relevant to the instant action, Disney has owned, operated and maintained Disney's Caribbean Beach Resort ("Caribbean Beach") and The Captain's Tavern ("Captain's Tavern") which are both located in Lake Buena Vista, Florida. Disney is not qualified or registered to do business in Massachusetts and has no offices, employees, agents, telephone listings, mailing addresses or bank accounts in Massachusetts. No travel agent located in Massachusetts is an agent of, or has authority to act on behalf of, Disney.

HRC is incorporated and has its sole place of business in Florida. HRC is not qualified or registered to do business in Massachusetts and has no offices, employees, agents, telephone listings, mailing addresses or bank accounts in Massachusetts. No travel agent located in Massachusetts is an agent of, or has authority to act on behalf of, HRC. HRC has never owned, operated or maintained Caribbean Beach or Captain's Tavern.

Disney and HRC are both wholly owned subsidiaries of Disney Enterprises, Inc. ("DEI"), a Delaware corporation. They are, however, separate legal entities maintaining separate books and records.

To demonstrate their *prima facie* case for personal jurisdiction, plaintiffs rely principally upon an affidavit (and accompanying exhibits) submitted by Sophie. Sophie claims that prior to 1981 and continuing through 1996 to the present she observed numerous advertisements for Walt Disney World, the Magic Kingdom, Epcot Center, and/or MGM Studios which are located in Orlando, Florida. Allegedly enticed by such advertisements, Sophie arranged, in May, 1996, for a trip to Walt Disney World for herself and her daughter, Johanna, who suffers from cerebral palsy and is confined to a wheelchair. Sophie states that she called Disney's 800 number to make reservations and was assured that she would receive handicapped-accessible accommodations for Johanna.

On or about May 7, 1996, Sophie received a written confirmation for the trip at her home in Massachusetts. The confirmation prominently displays the words "Disney" and the name of the hotel, "Disney's Caribbean Beach Resort", where the plaintiffs would be staying. Affidavit of Sophie Sigros ("Sigros Aff."), Exhibit A. The return address on the envelope in which the confirmation was mailed is directed to Walt Disney Attractions, Inc. ("WDA"). *Id.*

WDA, now known as Walt Disney Attractions, LLC, is a Florida limited liability company with its principal place of business in Florida.[1] WDA, among other things, owns and operates the "Central Reservations Office" for certain theme parks, resorts and hotels located in Florida. Just as with Disney and HRC, WDA is owned by DEI but is a separate legal entity and maintains separate books and records.

On or about May 22, 2000, Sophie paid a deposit for the trip by mailing to Disney a check made out to Caribbean Beach. Sigros Aff. ¶ 10, Exhibit B. Later, she received marketing materials from Disney at her home in Massachusetts.

The incident from which this action arises occurred on or about November 29, 1996, after Sophie and Johanna ate dinner at Captain's Tavern on the Caribbean Beach property. Captain's Tavern is equipped with a handicapped-accessible ramp. Sophie, feeling that Johanna's electric wheelchair was too heavy for her to control on the ramp, asked their server, "John Doe", to assist Johanna in leaving the restaurant. As the unidentified employee was helping Johanna down the ramp, he lost control of her wheelchair and it crashed at the bottom of the ramp. As a result, Johanna fractured her right tibia and allegedly suffered other physical and emotional damages.

Several months after the accident, Sophie received a letter from Lee Cockerell, Senior Vice President of Operations at Disney, thanking her for choosing Caribbean Beach and requesting that she complete an enclosed satisfaction survey. The letter was printed on stationary bearing the Disney letterhead and was mailed in an envelope bearing Disney's return address. Sigros Aff. ¶ 12, Exhibit C.

### III. *Disney's Motion to Dismiss*

■ To determine whether a federal district court has jurisdiction over a nonresident defendant in a diversity suit, the court must look to the law of the forum state. *Hahn v. Vermont Law School,* 698 F.2d 48, 49 (1st Cir.1983). Under Massachusetts law, jurisdiction over a nonresident defendant is appropriate if it is both authorized by statute and consistent with the due process requirements of the United States Constitution. *Good Hope Indus., Inc. v. Ryder Scott, Co.,* 378 Mass. 1, 5–6, 389 N.E.2d 76 (1979); *Nowak v. Tak How Inv., Ltd.,* 94 F.3d 708, 712 (1st Cir. 1996).

---

1. Although plaintiffs received a confirmation for their trip in an envelope with a return address of "Walt Disney Attractions, Inc.," the Court presumes that "Walt Disney Attrac- tions, Inc." is either the same as (or a predecessor of) "Walt Disney Attractions, LLC" referred to in the defendants' affidavits and that it ought to be a party to this action.

## A. The Massachusetts Long–Arm Statute

■ The relevant provision of the Massachusetts long-arm statute in the case at bar provides that a Massachusetts court may exercise personal jurisdiction:

over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's...transacting any business in this commonwealth.

M.G.L. c. 223A, § 3(a). In order for jurisdiction to exist pursuant to § 3(a), therefore, the facts must satisfy two requirements: 1) the defendant must have transacted business in Massachusetts, and 2) the plaintiff's claim must have arisen from the defendant's transaction of such business. *Tatro v. Manor Care, Inc.*, 416 Mass. 763, 767, 625 N.E.2d 549 (1994).

### 1. *Transaction of Business in Massachusetts*

■ The "transacting any business" clause in § 3(a) has been construed broadly. *Tatro*, 416 Mass. at 767, 625 N.E.2d 549. The Massachusetts Supreme Judicial Court ("SJC") has explained that

[a]lthough an isolated (and minor) transaction with a Massachusetts resident may be insufficient, generally the purposeful and successful solicitation of business from residents of the Commonwealth, by a defendant or its agent, will suffice to satisfy this requirement.

*Id.* Therefore, when a minor transaction is part of "a larger systematic effort to obtain business from Massachusetts businesses and residents," a foreign defendant may be deemed to have transacted business under § 3(a). *Id.* at 769, 625 N.E.2d 549. In *Tatro*, for example, the SJC found that the acceptance by a defendant, nonresident hotel of a reservation from a Massachusetts resident by telephone constituted transacting business under the long-arm statute because that contact was part of a broader attempt to solicit business from Massachusetts. *Id.* at 768–69, 625 N.E.2d 549. Similarly, this District Court

has interpreted *Tatro* to stand for the proposition that § 3(a) is satisfied "when there is persistent advertising and solicitation of business from Massachusetts residents, even if it only involves a single sale...." *Digital Equip. Corp. v. AltaVista Tech., Inc.*, 960 F.Supp. 456, 465–66 n. 19 (D.Mass.1997).

In a pre-*Tatro* case, *Morse v. Walt Disney World Co.*, 675 F.Supp. 42 (D.Mass. 1987), this Court found that an earlier incarnation of Disney as a Delaware (rather than Florida) corporation had transacted business in Massachusetts by 1) sending information to travel agents in Massachusetts, 2) accepting reservations and payments from the plaintiff in Massachusetts, and 3) sending correspondence such as billing invoices, written confirmations and promotional literature to the plaintiff's home in Massachusetts. *Id.* at 43.

Although lacking in precision, the plaintiffs' pleadings identify specific contacts between the plaintiffs and Disney similar to those deemed sufficient to constitute transacting business in *Morse*. Those contacts include Sophie's phone call to the Disney 800 number and the various mailings between Disney and Sophie. The plaintiffs also allege, in keeping with *Tatro*, that those relatively isolated contacts occurred against a backdrop of constant solicitation of business in Massachusetts over a period of years by way of numerous advertisements for Walt Disney World, the Magic Kingdom, Epcot Center and/or MGM Studios.

■ Defendants respond that the alleged contacts are insufficient to establish personal jurisdiction over Disney. They argue that Sophie never had any direct contact with Disney because the Disney 800 number is operated by WDA, not Disney. WDA operates the Central Reservations Office for certain Disney theme parks, hotels and resorts and is an entirely separate legal entity from Disney.

Despite the separate legal status of Disney and WDA, this Court is not persuaded that Disney should be permitted to hide behind such a transparent corporate shield for the purpose of avoiding personal jurisdiction in Massachusetts. The SJC has stated that affiliated corporations can be presumed to function as agents of one another when

> there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting.

*My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 619, 233 N.E.2d 748 (1968).

The organizational structures of Disney and WDA appear to be intermingled, if not interlocking. Disney shares several officers with WDA as well as many other entities within the Disney family of corporations. More importantly, there is evidence of a "confused intermingling" between the activities of WDA and Disney. At the very least, WDA takes reservations for hotel rooms owned and operated by Disney and mails out confirmations of those reservations. Disney's use of WDA to bring in business entwines the two corporations in a "common enterprise" such that it would be unreasonable to expect the average consumer to realize that WDA, not Disney, accepts reservations for Disney-owned resorts. Indeed, at all relevant times, Sophie erroneously believed that she "was dealing with the same Walt Disney World that [she] had seen on the advertisements, that answered the phone and that was located in Florida." Sigros Aff. ¶ 13.

The satisfaction survey mailed to Sophie in Massachusetts further supports the conclusion that the activities of Disney and WDA were intermingled. The letter requesting Sophie's participation in the survey was printed on Disney stationary and was mailed in an envelope naming Disney on the return address. The separate mailings from Disney and WDA regarding the same trip to Caribbean Beach were understandably confusing to the plaintiffs and sufficient to establish "serious ambiguity about the manner and capacity" in which those two corporations were acting. Although mailed after Johanna's accident, the survey letter constitutes a direct contact between Disney and a Massachusetts resident.

This Court is persuaded by the reasoning in the decision of the United States District Court in *Mallon v. Walt Disney World Co.*, 42 F.Supp.2d 143 (D.Conn. 1998). In that case, the court held that Disney's advertising activity in Connecticut, conducted by WDA pursuant to an oral agreement, satisfied the Connecticut long-arm statute. *Id.* at 144. Although the sweep of that statute appears to be broader than its Massachusetts counterpart (employing a "soliciting business" rather than "transacting business" standard) the case is instructive nonetheless. Based upon evidence of an oral contract linking the entities, the Connecticut court, in effect, viewed WDA as an extension of Disney. This Court, without such evidence, is nevertheless convinced of the connection between WDA and Disney. Accordingly, it finds that WDA acted as Disney's agent in Massachusetts and that therefore any contacts between WDA and Sophie are imputed to Disney.

■ Defendants also contend that any purported advertising in Massachusetts for various Disney resorts cannot support personal jurisdiction because 1) Disney does not purchase local advertising in Massachusetts, and 2) its advertising which does appear in Massachusetts is part of a nationwide or regional advertising campaign for the Walt Disney World Resort in Florida. The Massachusetts Appeals Court has held that

the dissemination, on a persistent basis, of advertising, print and electronic, aimed at cultivating a market area in Massachusetts, without any other contact in Massachusetts . . . .

constitutes transacting business under the long-arm statute. *Gunner v. Elmwood Dodge, Inc.,* 24 Mass.App.Ct. 96, 97, 506 N.E.2d 175 (1987). The Court noted, however, that "[a]dvertisements in general trade magazines which happen to circulate in the forum State, but which are not aimed at customers in a particular area," would not satisfy the long-arm statute. *Id.* at 99, 506 N.E.2d 175.

Citing this qualification in *Gunner,* the defendants contend that any nationwide or regional advertising campaign for the Walt Disney World Resort which Sophie may have observed was not aimed at cultivating a specific market in that state. They also argue that because the nonresident defendant in *Gunner* advertised in a local newspaper, advertising activity can only constitute transacting business if it is similarly focused on such a narrowly defined market.

The Court rejects both arguments. First, *Gunner* requires that advertising directly target a market area when such advertising is the only contact offered to support transacting business in Massachusetts. By contrast, here, any advertising activity by Disney and/or WDA in Massachusetts merely supplements the more specific contacts between Disney/WDA and Sophie, which this Court has found sufficient to establish personal jurisdiction. Second, even if it were the only contract between Sophie and Disney/WDA, the advertising for the Walt Disney Resort which Sophie viewed does not fail to target directly a market in Massachusetts simply because it was part of a national or regional advertising campaign. Rather, that advertising was clearly intended to entice Massachusetts residents to visit the Walt Disney World Resort.

In summary, the plaintiffs have stated facts sufficient to establish that Disney, either acting directly or through its agent, WDA, transacted business in Massachusetts via specific communications with Sophie and by advertising aimed at Massachusetts residents.

### 2. *Whether Injury "Arises From" the Transaction of Business*

Prior to the SJC's decision in *Tatro,* the First Circuit Court of Appeals read the "arises from" language in § 3 of the Massachusetts long-arm statute restrictively. It held that an injury arises from the transaction of business only when that transaction is the legal or proximate cause of such injury. *Marino v. Hyatt Corp.,* 793 F.2d 427, 428–30 (1st Cir.1986). The defendants adhere to that interpretation and contend that the plaintiffs' claims arise only from Johanna's accident in Florida, not from any alleged contacts in Massachusetts between Disney and the plaintiffs.

Finding no basis in the long-arm statute for the First Circuit's strict approach, however, the SJC has adopted a "but for" test for determining when an injury arises from the transaction of business. *Tatro,* 416 Mass. at 770–71, 625 N.E.2d 549. In *Tatro,* it held that the resident plaintiff's injuries "arose from" the California hotel's transaction of business in Massachusetts because but for 1) the hotel's solicitation of her business, and 2) the hotel's agreement to provide her with a hotel room in California, the plaintiff would not have been injured at the hotel. *Id.* at 771–72, 625 N.E.2d 549. The SJC concluded that the Massachusetts resident's in-forum act of reserving a room in an out-of-state hotel "is considered the first step in a train of events that results in personal injury." *Id.* at 770, 625 N.E.2d 549.

Applying *Tatro* to the instant case, Johanna's injury clearly "arose from" Sophie's act of reserving a room at Caribbean Beach because "but for" that contact she would not have been injured. This conclusion is strengthened by Sophie's

claim that she was attracted to Caribbean Beach by the assurance that handicapped-accessible facilities would be provided for her daughter. *Cf. Tidgewell v. Loon Mountain Recreation Corp.*, 820 F.Supp. 630, 632 (D.Mass.1993) (claim "arose from" transaction of business in Massachusetts by defendant because plaintiff was drawn to defendant's ski resort by advertisements regarding its safety). Accordingly, and notwithstanding the defendants' citation to several conflicting district court opinions from outside of the First Circuit, this Court finds that the plaintiffs have satisfied both prongs of § 3(a) of the Massachusetts long-arm statute.

## B. The Due Process Clause

The due process clause of the United States Constitution requires minimum contacts between a nonresident defendant and the forum state such that the exercise of personal jurisdiction over that defendant accords with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In analyzing minimum contacts, courts have distinguished between two kinds of personal jurisdiction: "general" and "specific". General jurisdiction exists when the litigation

> is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in a systematic activity, unrelated to the suit, in the forum state....

*United Elec. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir.1992) ("Pleasant St. I"). Specific jurisdiction, by contrast, narrows a court's focus to a "specific set of interactions as a basis for personal jurisdiction." *Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 144 (1st Cir.1995). Plaintiffs contend that this Court may properly exercise either kind of jurisdiction over Disney but because this Court finds that it has specific jurisdiction, it will not address the question of general jurisdiction.

The First Circuit utilizes a three-part analysis to determine if sufficient contacts exist to exercise specific personal jurisdiction:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

*Pleasant St. I*, 960 F.2d at 1089; *see also Pritzker v. Yari*, 42 F.3d 53, 60–61 (1st Cir.1994), *cert. denied*, 514 U.S. 1108, 115 S.Ct. 1959, 131 L.Ed.2d 851 (1995).

### 1. *Relatedness*

The first consideration under the tripartite framework is whether the plaintiffs' claims arise out of, or relate to, Disney's in-forum activities. *Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1st Cir.1995). Relatively speaking, the relatedness inquiry is a "flexible, relaxed standard". *Pritzker*, 42 F.3d at 60–61. Although the relatedness requirement is "the least developed prong of the due process inquiry," *Ticketmaster–New York, Inc. v. Alioto*, 26 F.3d 201, 206 (1st Cir.1994), the First Circuit has observed that it serves the important function of directing a court's attention to the nexus between a plaintiff's claim and the defendant's contacts with the forum. *Pleasant St. I*, 960 F.2d at 1089. Specifically, the relatedness requirement

> is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state.

*Sawtelle*, 70 F.3d at 1389. Indeed, in *Pleasant St. I*, the First Circuit explained that, at this stage of the analysis, it is

important to bear in mind the nature of the plaintiff's claim and to consider whether the plaintiff's cause of action can "conceivably be said to have arisen directly from, or been caused proximately by," the defendant's contacts with the forum. 960 F.2d at 1089.

This proximate cause test requires an "arising from" analysis distinct from the "but for" analysis undertaken under the Massachusetts long-arm statute. *Nowak v. Tak How Inv. Ltd.*, 899 F.Supp. 25, 30 (D.Mass.1995), *aff'd*, 94 F.3d 708 (1st Cir.1996). Nevertheless, in light of the flexible nature of the relatedness inquiry, the First Circuit has declined to require strict adherence to a proximate cause standard, instead applying a "small overlay of 'but for' on 'proximate cause' ". *Nowak*, 94 F.3d at 715–16. The rationale is that

[w]hen a foreign corporation directly targets residents in an ongoing effort to further a business relationship, and achieves its purpose, it may not necessarily be unreasonable to subject that corporation to forum jurisdiction when the efforts lead to a tortious result. The corporation's own conduct increases the likelihood that a specific resident will respond favorably. If the resident is harmed while engaged in activities integral to the relationship the corporation sought to establish, we think the nexus between the contacts and the cause of action is sufficiently strong to survive the due process inquiry at least at the relatedness stage.

*Id.*

In *Nowak*, the plaintiff's employer, Massachusetts-based Kiddie Products, Inc., made reservations, after a series of exchanges by telecopier, for several employees including the plaintiff and his wife, at a hotel in Hong Kong owned by the defendant. While a registered guest at the hotel, the plaintiff's wife drowned in the hotel swimming pool. *Id.* at 711. Applying the relatedness test, the First Circuit upheld the district court's finding that

[t]he Hotel's solicitation of Kiddie's business and the extensive back-and-forth resulting in . . . [the reservation of] a set of rooms for Kiddie employees and their spouses set in motion a chain of reasonably foreseeable events resulting in Mrs. Nowak's death. The possibility that the solicitation would prove successful and that one or more of the guests staying at the Hotel as a result would use the pool was in no sense remote or unpredictable; in fact, the Hotel included the pool as an attraction in its promotional materials.

*Id.* at 716 (*quoting Nowak*, 899 F.Supp. at 31). The court concluded that, although such solicitation was not the proximate cause of Mrs. Nowak's death, it did "represent a meaningful link" to the harm suffered sufficient to maintain jurisdiction. *Id.*

The facts in the case at bar clearly fall within the First Circuit's modification of the proximate cause standard for relatedness. Disney's solicitation in Massachusetts which led Sophie to make reservations at Caribbean Beach was not the proximate cause of Johanna's injury at Captain's Tavern, but it was reasonably foreseeable that advertising in Massachusetts for the Walt Disney World Resort would induce Massachusetts residents to make reservations at a Disney-owned hotel. More specifically, it was reasonably foreseeable from Disney/WDA's communications with Sophie that she and Johanna would eat at restaurants located on the Caribbean Beach property, such as Captain's Tavern.

Furthermore, Disney assured Sophie that handicapped-accessible facilities were available for Johanna in their hotel room. By extension, it was surely foreseeable that a handicapped guest would use and might be injured by use of the wheelchair ramp at Captain's Tavern. The plaintiffs have thus satisfied the relatedness requirement.

### 2. *Purposeful Availment*

 The analysis of the second element of the constitutional prong of specific personal jurisdiction involves a determination of whether Disney's contacts with the forum state represent a "purposeful availment" by defendant of the privilege of conducting business in that state. *Ticketmaster*, 26 F.3d at 207. The cornerstones of the "purposeful availment" requirement are voluntariness and foreseeability. *Id.* The voluntariness prong ensures that the defendant's contacts with the forum state are "not based on the unilateral actions of another party or a third person". *Nowak*, 94 F.3d at 716 (*citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). The foreseeability prong requires that "the defendant's contacts with the forum state be such that he should reasonably anticipate being haled into court there." *Id.* (*citing World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

Although Sophie initiated contact with Disney, its communications with her, either directly or through WDA, were by no means involuntary. Furthermore, through the advertising for its resorts, Disney plainly "reached into Massachusetts with an unprompted solicitation and sought to entice Massachusetts residents to leave the state and visit its...facilities." *Nowak*, 899 F.Supp. at 32; *see also Mallon*, 42 F.Supp.2d at 145 (holding that Disney, acting through its agent WDA, "deliberately reached out" to attract Connecticut residents to their resort). The contacts with Sophie and with Massachusetts in general rendered foreseeable the possibility of being haled into a Massachusetts court. *Nowak*, 94 F.3d. at 717 (finding possibility of being haled into Massachusetts court foreseeable where defendant solicited Massachusetts corporation for the purpose of bringing employees of that corporation to its hotel in Hong Kong); *Mallon*, 42 F.Supp.2d at 145 ("[a] defendant that systematically solicits Connecticut residents to travel to its Florida resort should expect to be amendable to suit in Connecticut....").

It is without doubt that the nationwide advertising for Walt Disney Resorts, which the defendants admit was circulated in Massachusetts, was intended to avail Disney and other Disney entities of the privilege of conducting business in the state. Accordingly, the plaintiffs have established that Disney purposefully availed itself of the privilege of conducting business in Massachusetts.

### 3. *The Gestalt Factors*

 The third and final stage of the personal jurisdiction analysis affords an opportunity for concepts of reasonableness to illuminate that review. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The Supreme Court has identified five such considerations, termed by the First Circuit, "the gestalt factors": 1) the defendant's burden of appearing, 2) the forum state's interest in adjudicating the dispute, 3) the plaintiff's interest in obtaining convenient and effective relief, 4) the judicial system's interest in obtaining the most effective resolution of the controversy, and 5) the common interests of all sovereigns in promoting substantive social policies. *Pleasant St. I*, 960 F.2d at 1088 (*citing Burger King Corp.*, 471 U.S. at 477, 105 S.Ct. 2174).

### a. *the defendants' burden of appearance*

 It would undoubtedly cause Disney, located in Florida, some burden to defend itself in Massachusetts. The First Circuit "has recognized, however, that it is almost always inconvenient and costly for a party to litigate in a foreign jurisdiction". *Nowak*, 94 F.3d at 718. Thus, for this particular gestalt factor to have any significance, a defendant must show that the exercise of jurisdiction is "onerous in a special, unusual, or other constitutionally significant way". *Id.* (*quoting Pritzker*, 42

F.3d at 64). Disney contends that appearing before this Court will be burdensome because 1) Disney is itself located in Florida, 2) the locus of Johanna's accident is in Florida, and 3) numerous indispensable witnesses, primarily Disney employees such as the yet unidentified "John Doe" and recordkeepers familiar with the procedure for recording complaints and/or notices of alleged accidents, reside in Florida. These inconveniences do not constitute unusual or constitutionally significant burdens. Instead, as noted by the district court in *Nowak*, they are "but an ancillary cost of doing business within this district". 899 F.Supp. at 34. If, in *Nowak*, the burdens faced by a Hong Kong defendant were insufficient to activate this gestalt factor in its favor, then clearly such burdens are even less availing to Disney here.

### b. the forum state's adjudicatory interest

Although Johanna's injury occurred in Florida, significant events leading up to that injury took place in Massachusetts thus giving Massachusetts an interest in the instant litigation. *Nowak*, 94 F.3d at 718. The First Circuit has noted that

> Massachusetts has a strong interest in protecting its citizens from out-of-state solicitations for goods or services that prove to be unsafe, and it also has an interest in providing its citizens with a convenient forum in which to assert their claims.

*Id.* (*citing Burger King Corp.*, 471 U.S. at 473, 105 S.Ct. 2174). Accordingly, this factor weighs in the plaintiffs' favor.

### c. the plaintiffs' convenience

 This Court must accord deference to the plaintiffs' choice of forum. *Nowak*, 94 F.3d at 718. Furthermore, a Massachusetts forum is obviously more convenient for Sophie and Johanna than a Florida forum, especially in light of Johanna's handicap. This gestalt factor therefore also cuts in favor of the plaintiffs.

### d. the administration of justice

The fourth gestalt factor "focuses on the judicial system's interest in obtaining the most effective resolution of the controversy". *Nowak*, 94 F.3d at 718. This factor is often a wash, *see, e.g., Sawtelle*, 70 F.3d at 1395; *Ticketmaster*, 26 F.3d at 211, and that proves to be the case here as well.

### e. pertinent policy arguments

The final gestalt factor requires this Court to consider the interests of the affected forum states in substantive social policies. *Nowak*, 94 F.3d at 719. As noted earlier, Massachusetts has a clear interest in protecting its citizens from foreign providers of goods and services and in affording those citizens a convenient forum in which to bring their claims. On the other hand, Florida

> has an interest in protecting visitors to promote and preserve its tourism industry, in protecting its businesses, and in providing all parties with a convenient forum.

*Id.* (reaching same conclusion with respect to Hong Kong forum). In *Nowak*, the First Circuit found that Massachusetts' interest in protecting its citizens slightly outweighed the interest of Hong Kong in protecting its businesses. *Id.* In the instant case, the balance similarly weighs somewhat in favor of a Massachusetts forum.

### 4. Conclusion

 On balance, the gestalt factors weigh strongly in favor of the Massachusetts plaintiffs. Considered together with their adequate showing on the first two prongs of the constitutional test for specific jurisdiction, this Court concludes that the exercise of its jurisdiction over Disney is reasonable and does not offend the notions of fair play and substantial justice.

### IV. *HRC's Motion to Dismiss*

 The defendants style their motion to dismiss with respect to HRC as

one for failure to state a claim upon which relief can be granted under Fed. R.Civ.P. 12(b)(6). Rule 12 provides that a Rule 12(b)(6) motion to dismiss shall be treated as a motion for summary judgment when matters outside the pleadings are submitted and not excluded by the court. Because the defendants have submitted affidavits, they argue that a summary judgment standard is appropriate. The thrust of the defendants' motion is, however, that this Court lacks personal jurisdiction over HRC. Accordingly, it will be treated as a motion to dismiss for lack of personal jurisdiction under Fed. R.Civ.P. 12(b)(2).

■ The plaintiffs allege that HRC is a subsidiary of Disney and a joint venturer with Disney in the ownership and operation of Caribbean Beach and Captain's Tavern. The defendants contend that HRC has never owned, operated or maintained Caribbean Beach or the Captain's Tavern and therefore cannot be held liable for any accident occurring on those premises.

■ Although in determining whether a *prima facie* showing of personal jurisdiction has been made this Court "accepts properly supported proffers of evidence by a plaintiff as true", it need not afford deference to plaintiffs who simply rest on their pleadings and fail to make any affirmative offer of proof. *Boit v. Gar–Tec Products, Inc.,* 967 F.2d 671, 675 (1st Cir. 1992).

To satisfy the *prima facie* standard for personal jurisdiction over a nonresident defendant such as HRC, the plaintiffs must demonstrate that jurisdiction is authorized by the Massachusetts long-arm statute and the due process clause of the United States Constitution. *Good Hope Indus., Inc. v. Ryder Scott, Co.,* 378 Mass. 1, 5–6, 389 N.E.2d 76 (1979); *Nowak v. Tak How Inv., Ltd.,* 94 F.3d 708, 712 (1st Cir.1996). The plaintiffs do not allege any HRC contacts with Massachusetts that would qualify as transacting business in Massachusetts within the meaning of the long-arm statute. Jurisdiction over HRC will lie, then, only if the activities of HRC are confusingly intermingled with those of Disney so as to warrant imputing the established contacts between Disney/WDA and Massachusetts to HRC itself.

To support their contention that both HRC and Disney own and operate Caribbean Beach and Captain's Tavern and therefore have confusingly intermingled activities, the plaintiffs offer evidence of a liquor license for Caribbean Beach issued by the Florida Department of Business & Professional Regulation which lists Disney and HRC as co-licensees. The plaintiffs also allege that HRC and Disney share several officers and directors. Even if true, those facts are insufficient to make a *prima facie* showing of personal jurisdiction.

■ Common ownership coupled with common management of two or more corporations will not give rise to liability of one corporation for the acts of another without additional facts indicating the existence of an agency or similar relationship. *Id.; see also American Home Assurance Co. v. Sport Maska, Inc.,* 808 F.Supp. 67, 73 (D.Mass.1992) ("[t]hat a parent and subsidiary share common officers, by itself, is not enough to support the alter-ego theory"). With respect to the relationship between WDA and Disney, there is evidence that WDA took reservations for hotel rooms owned and operated by Disney and conducted advertising in Massachusetts on behalf of Disney. Here, in contrast, plaintiffs offer little more than the common control of Disney and HRC as evidence of a confused intermingling of activity. The liquor license alone does not buttress any organizational overlap so as to permit an inference that such a relationship exists between HRC and Disney. Accordingly, the plaintiffs have failed to show that this Court may exercise personal jurisdiction over HRC.

### V. *Motion to Transfer Venue*

■ Assuming, for the sake of argument, that this Court has personal jurisdiction over Disney and HRC, the defendants suggest that the case · should be transferred to the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1404(a). Apparently, fearing an unfavorable ruling by this Court after the statute of limitations has run on their claims in Florida, the plaintiffs have assented to defendants' request and have also filed a separate action in Florida state court. It is presumed that 1) that assent and filing were caused by this Court's delay in ruling on the pending motions, and 2) plaintiffs would prefer this forum which they chose in the first place.

■ Section 1404(a) provides:

For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

In addition to the convenience of parties and witnesses, factors to be considered by the court include the availability of documents, the possibility of consolidation and the order in which the district court obtained jurisdiction. *Cianbro Corp. v. Curran–Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987). The burden of proof rests with the party seeking transfer and there is a strong presumption in favor of the plaintiff's choice of forum. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

■ This Court's previous discussion of the gestalt factors with respect to Disney is equally applicable to the issue of convenience of the parties and witnesses.[2] It would, of course, be inconvenient for Disney to litigate in Massachusetts because it might well have to produce its employees as witnesses in Massachusetts rather than in their home state of Florida. It would, however, be at least as onerous for the plaintiffs to litigate in Florida because they would have to bear the cost of hiring Florida counsel and traveling to and from Florida. Johanna's disability would further exaggerate that burden. The presumption in favor of a plaintiff's choice of forum renders transfer inappropriate where its effect is merely to shift the inconvenience from one party to the other. *Trans National Travel Inc. v. Sun Pacific Int'l, Inc.*, 10 F.Supp.2d 79, 81 (D.Mass. 1998). Moreover, the balance of convenience focuses on the comparative financial abilities of the parties and the cost of litigation should be borne by the party in the best position to absorb and spread it. *Kleinerman v. Luxtron Corp.*, 107 F.Supp.2d 122, 125 (D.Mass.2000). Clearly, Disney is that party here.

■ This Court must also consider the convenience of witnesses with a preference for live testimony over testimony by deposition. *Id.* If, however, a court order or the persuasion of an employer who is a party to the action can secure the appearance of witnesses regardless of the location of forum, that factor diminishes in importance. *Id.* at 125–26. If, as the defendants claim, several key witnesses are Disney employees, Disney can surely procure their appearance in Massachusetts. The same holds true for any documents or other proof that may be located in Florida.

Based on all of these factors, this Court concludes that to allow defendants' motion to transfer would merely shift the burden of litigating in a foreign forum rather than eliminate it. The defendants have failed to demonstrate that a Massachusetts forum is substantially less convenient than a Florida forum. Accordingly, the plaintiffs' choice of forum will control.

### ORDER

For the foregoing reasons, defendants' motion to dismiss or, in the alternative, to transfer venue (Docket No. 6) is:

---

2. Because the plaintiffs have failed to establish that this Court has personal jurisdiction over HRC, this Court considers the motion to transfer only with respect to Disney.

**72**

1) as to the motion to dismiss the complaint against defendant, Disney, DENIED;

2) as to the motion to dismiss the complaint against defendant, HRC, ALLOWED; and

3) as to the motion, in the alternative, to transfer venue is DENIED.

If the plaintiffs do not notify this Court to the contrary within ten (10) days of entry of this order, their assent to transfer (Docket No. 19) is presumed withdrawn. So ordered.