Here, New Prime is a Nebraska corporation with its principal place of business in Missouri. Further, only about one percent of the miles its drivers covered in the last five years has been in Massachusetts and less than one percent of its drivers over the same period reside in the Commonwealth. Plaintiffs do not argue that New Prime is "essentially at home" in Massachusetts or suggest that this is an "exceptional" case where the exercise of *95 general jurisdiction would be appropriate. Thus, the extent of New Prime's Massachusetts activities does not approach what is required to assert general jurisdiction.
b. Specific Jurisdiction
Where a court lacks general jurisdiction, it may still exercise specific personal jurisdiction. The inquiry into whether there has been the requisite "minimum contacts" necessary to assert specific personal jurisdiction is inherently imprecise: "the criteria which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative." International Shoe Co. v. Washington , 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945). To assist in this necessarily individualized assessment, the First Circuit has held that a plaintiff seeking to establish specific jurisdiction must demonstrate that three conditions are satisfied:
First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must ... be reasonable.
Phillips , 530 F.3d at 27 (quoting Adelson v. Hananel , 510 F.3d 43, 49 (1st Cir. 2007) ).
i. Relatedness
The relatedness inquiry "serves the important function of focusing the court's attention on the nexus between a plaintiff's claim and the defendant's contacts with the forum." Sawtelle , 70 F.3d at 1389. In a contract dispute, the First Circuit has held that "the proximate cause standard better comports with the relatedness inquiry because it so easily correlates to foreseeability, a significant component of the jurisdictional inquiry. A 'but for' requirement, on the other hand, has in itself no limiting principle; it literally embraces every event that hindsight can logically identify in the causative chain." Nowak v. Tak How Investments, Ltd. , 94 F.3d 708, 715 (1st Cir. 1996). However, the court qualified its support for the proximate cause standard:
That being said, we are persuaded that strict adherence to a proximate cause standard in all circumstances is unnecessarily restrictive. The concept of proximate cause is critically important in the tort context because it defines the scope of a defendant's liability. In contrast, the first prong of the jurisdictional tripartite test is not as rigid: it is, relatively speaking, ... a flexible, relaxed standard. We see no reason why, in the context of a relationship between a contractual or business association and a subsequent tort, the absence of proximate cause per se should always render the exercise of specific jurisdiction unconstitutional.
When a foreign corporation directly targets residents in an ongoing effort to further a business relationship, and achieves its purpose, it may not necessarily be unreasonable to subject that corporation to forum jurisdiction when the efforts lead to a tortious result. The corporation's own conduct increases the likelihood that a specific resident will respond favorably. If the resident is harmed while engaged in activities integral to the relationship the corporation sought to establish, we think the nexus between the contacts and the cause of action is sufficiently strong to survive the due process inquiry at least at the relatedness stage.
*96 This concept represents a small overlay of "but for" on "proximate cause." Id. at 715-16. (quotation marks and citations omitted).
Thus, when a tort claim arises out of a contractual relationship (as is the case here) the First Circuit has held that but-for causation may satisfy the relatedness inquiry and comport with due process.
In Nowak , the defendant, a hotel in Hong Kong, solicited the plaintiff's company advertising corporate rates. Subsequently, the plaintiff's wife drowned in the hotel pool. The court found jurisdiction and noted that the defendant "knew that [the plaintiff's company] employees would stay at its hotel, and could easily anticipate that they might use the pool, a featured amenity of the hotel." Id. at 716. Therefore, while the relationship between the solicitation of business and the death of the plaintiff's wife "does not constitute a proximate cause relationship, it does represent a meaningful link between [the defendant's] contact and the harm suffered. Given these circumstances, we think it would be imprudent to reject jurisdiction at this early stage of the inquiry." Id. See Matos v. Seton Hall Univ. , 102 F.Supp.3d 375, 379-80 (D. Mass. 2015) (finding relatedness prong met when a student sued a university for discrimination at its New Jersey campus that arose out of recruiting materials and a scholarship offer sent to his Massachusetts home); Sigros v. Walt Disney World Co. , 129 F.Supp.2d 56, 67 (D. Mass. 2001) (finding relatedness prong met because "Disney's solicitation in Massachusetts which led to [the plaintiff] to make reservations at [the defendant's hotel] was not the proximate cause of [the plaintiff's] injury at [a restaurant on the resort's property], but it was reasonably foreseeable that advertising in Massachusetts for the Walt Disney World Resort would induce Massachusetts residents to make reservations at a Disney-owned hotel" and that they might subsequently eat at the restaurant).
Here, Mr. Moura was contacted by New Prime in the Commonwealth. (Turner Decl. ¶ 8). He was sent snail-mail, email, and received phone calls from Defendant describing employment opportunities. Id. Further, Mr. Moura was sent, and accepted a contract to begin its driver training program. Id. ¶¶ 9-11. This solicitation of business and subsequent contractual relationship, like the solicitation of business in Nowak and Sigros , and the scholarship offer in Matos , was not the proximate cause of Mr. Moura's death. Nonetheless, Mr. Moura's death was made more likely by New Prime's recruiting efforts aimed at and the contract sent to Mr. Moura in the Commonwealth. Indeed, but for these efforts, Mr. Moura would likely still be alive. Therefore, I find that New Prime's activity and Mr. Moura's death are sufficiently related to satisfy the constitutional requirements of due process.
ii. Purposeful Availment
"In determining whether the purposeful availment condition is satisfied, our key focal points are the voluntariness of the defendants' relevant Massachusetts contacts and the foreseeability of the defendants falling subject to Massachusetts's jurisdiction." Copia Commc'ns, LLC v. AMResorts, L.P. , 812 F.3d 1, 5 (1st Cir. 2016) (quotation marks and citation omitted). Voluntariness requires that the defendant's contacts with the forum state are "not based on the unilateral actions of another party or a third person." Nowak , 94 F.3d at 716 (citing Burger King Corp. v. Rudzewicz , 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ). Foreseeability requires that "the defendant's contacts with the forum state be such that he *97 should reasonably anticipate being haled into court there." Id. (citing World-Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. 559 ). As an operator of a nation-wide trucking business, New Prime does have extensive contacts with the forum. When inquiring whether Defendant has purposefully availed itself of the forum, however, the only relevant contacts are those that gave rise to the cause of action. See Copia Communications , 812 F.3d at 5.
New Prime plainly "reached into Massachusetts" in order to solicit Mr. Moura's employment. Sigros , 129 F.Supp.2d at 68 (citation omitted). As discussed above, New Prime voluntarily and extensively contacted Mr. Moura and eventually entered into a training contract with him while he was in the forum. After Mr. Moura accepted the training contract, New Prime sent a confirmation document to him and purchased a bus ticket for him to travel from his Massachusetts home to Pennsylvania in order to begin training. Thereafter, Mr. Moura performed much of his training contract in the Commonwealth, which is properly regarded as part of New Prime's contact in the forum. See Cossart , 804 F.3d at 21 (noting that "the performance of work under [a] contract [by a plaintiff]" is properly "treated as contact with the forum by the out-of-state company because the voluntary contractual relationship had foreseeable led the [plaintiff] to undertake that work.") (emphasis in original). These contacts rendered foreseeable the possibility of being haled into a Massachusetts court. See Nowak , 94 F.3d at 717 (finding the possibility of being subject to jurisdiction in Massachusetts foreseeable where defendant solicited Massachusetts corporation for the purpose of bringing employees of that corporation to its Hong Kong hotel). Therefore, I also find that New Prime has purposefully availed itself of the forum.[1]
iii. Reasonableness
Finally, this court must consider the reasonableness of exercising jurisdiction over New Prime. Accordingly, asserting jurisdiction must comport with traditional notions of "fair play and substantial justice." International Shoe , 326 U.S. at 320, 66 S.Ct. 154. "Out of this requirement, courts have developed a series of factors that bear on the fairness of subjecting a nonresident to a foreign tribunal."
*98 Nowak , 94 F.3d at 717. These "gestalt factors" are:
(1) the defendant's burden of appearing [in the forum state], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies. C.W. Downer , 771 F.3d at 69 (alterations in original) (quoting Ticketmaster , 26 F.3d at 209 ).
The gestalt factors help the court do substantial justice, especially where the relatedness and purposeful availment inquiries are close. Nowak , 94 F.3d at 717. "In such cases, the gestalt factors may tip the constitutional balance." Id. Consequently, our assessment of these factors operates on a sliding scale: "[T]he weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." Ticketmaster-New York, Inc. v. Alioto , 26 F.3d 201, 210 (1st Cir. 1994). "The reverse is equally true: a strong showing of reasonableness may serve to fortify a more marginal showing of relatedness and purposefulness." Nowak , 94 F.3d at 717.
(1) Burden of Appearance
While it is always a burden for a foreign defendant to appear in the forum state, for this factor to have any import, the defendant must show that the "exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way." Pritzker v. Yari , 42 F.3d 53, 64 (1st Cir. 1994). Here, New Prime's burden is not unusual compared to other foreign defendants. Indeed, the burden of appearance for New Prime is likely comparatively small. New Prime has extensive contacts with Massachusetts and operates in the forum on a daily basis. Thus, this factor does not tip the balance in New Prime's favor.
(2) Interest of the Forum
While a forum state has a significant interest in asserting jurisdiction over a defendant who causes tortious injury within its borders, Ticketmaster , 26 F.3d at 211, that interest is lessened when the injury occurs outside of the forum. Sawtelle , 70 F.3d at 1395. "Nonetheless, our task is not to compare the interest of the two sovereigns-the place of the injury and the forum state-but to determine whether the forum state has an interest." Nowak , 94 F.3d at 718. And while the interest of the Commonwealth may have been greater had the accident occurred here, "Massachusetts has a strong interest in protecting its citizens from out-of-state solicitations for goods or services that prove to be unsafe." Id. Thus, although the accident did not take place in the Commonwealth, significant events did take place in the forum that led to the accident and give the forum an interest in adjudicating the dispute. Indeed, New Prime regularly reaches into Massachusetts, employing a number of drivers and deriving substantial profit in the forum. Here, New Prime reached into the Commonwealth and convinced one of its citizens to partake in its training program. Subsequently, Mr. Moura was killed in a truck owned by New Prime and operated by one of its independent contractors. The forum has an interest in keeping its citizens safe from New Prime's voluntary and purposeful actions in the forum. Thus, this factor tips the scales in Plaintiffs' favor.
(3) Plaintiff's Convenience
"This Court must accord deference to the [Plaintiff's] choice of a Massachusetts *99 forum." Nowak , 94 F.3d at 718. In addition to the deference that must be afforded this choice, litigating in Massachusetts is clearly most convenient for Plaintiff. Ms. Turner is suddenly a single mother of three children. (Docket No. 17 at 18). Further, all of the witnesses to the damages suffered by Mr. Moura are here in Massachusetts. Id. This factor unequivocally tips in favor of asserting jurisdiction.
(4) The Administration of Justice
Typically, "this factor is a wash." Nowak , 94 F.3d at 718 (citing Ticketmaster , 26 F.3d at 211 ; Sawtelle , 70 F.3d at 1395 ). However, the administration of justice "counsels against furcation of the dispute among several different jurisdictions. Such a result would both contravene the goal of judicial economy and conjure up the chimera of inconsistent outcomes." Pritzker , 42 F.3d at 64. In this case, if this Court does not assert jurisdiction there could be consolidation issues following a state court filing in Massachusetts for Medical Malpractice with the possibility of piecemeal litigation in different forums. (Docket No. 17 at 19). Thus, the most efficient resolution of this litigation is likely in the Commonwealth.
(5) Pertinent Policy Arguments
The final factor "implicates the interests of the affected governments in substantive social policies." Pritzker , 42 F.3d at 64. The Commonwealth has an interest in preventing corporations from reaching into the forum and then exposing them to subsequent harm. See Nowak , 94 3d at 719 ("Massachusetts has an interest in protecting its citizens from out-of-state providers of goods and services as well as affording its citizens a convenient forum in which to bring their claim."). While other forums may have an interest in this litigation, none would appear to be as weighty as Massachusetts's interest in protecting its citizens from harm from foreign corporations. Accordingly, this factor also tips in favor of asserting jurisdiction.
In addition to satisfying the requirements of relatedness and purposeful availment, the "gestalt factors" also favor this Court asserting jurisdiction over New Prime. Thus, personal jurisdiction comports with the constitutional requirements of due process.
Conclusion
For the reasons stated above, I find that Plaintiffs have proffered sufficient evidence to support a finding that the assertion of jurisdiction over New Prime does not violate the Massachusetts long-arm statute or offend constitutional due process. Therefore, New Prime's motion to dismiss for lack of personal jurisdiction (Docket No. 9) is denied.

In the breach of contract context, the First Circuit held in Cossart that the defendant had purposefully availed itself of Massachusetts based on three factors: "the defendant's in-forum solicitation of the plaintiff's services, the defendant's anticipation of the plaintiff's in-forum services, and the plaintiff's actual performance of extensive in-forum services." Copia Communications , 812 F.3d at 6 (citing Cossart, 804 F.3d at 21 ). As to the first two factors, the court noted that the defendant "recruited [the plaintiff] at his home in Massachusetts. The resulting employment contract ... contemplated that [the plaintiff] would continue to work from Massachusetts on [the defendant's] behalf and that the company would facilitate that work by providing the requisite office equipment." Cossart , 804 F.3d at 21. The same is true here. Defendant recruited Mr. Moura to drive for New Prime at his home in Massachusetts. Further, after completing his training contract, both parties presumably anticipated that Mr. Moura would drive for Defendant New Prime in the Commonwealth. In addition, Defendant facilitated that work by providing the requisite training for Mr. Moura. As to the third factor, the court in Cossart noted that the plaintiff "did significant work for [the defendants] in Massachusetts-as the defendants clearly foresaw he would." Id. at 22. Again, the same is true here. Mr. Moura performed on his training contract with New Prime, completing 40,000 miles of driving and much of it throughout the Commonwealth-as New Prime foresaw he would. Thus, while this is not a breach contract claim, Mr. Moura has also demonstrated the same jurisdictional prerequisites for purposeful availment that the First Circuit has mandated in contract cases.